The Honorable United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Judge Barron. Thank you. I just want to welcome Judge Delgado to this sitting in our court and we're very grateful for his assistance to our court for being here today. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is Gaspee Project et al. v. Diane C. Mederos et al. appeal number 20-1944. Attorney, sir, please introduce yourself for the record and proceed with your argument. Good morning, your honors. Daniel, sir, of the Liberty Justice Center along with my colleagues who helped on the briefs, Jeff Schwab of Liberty Justice and Joe Larissa of Larissa Law in Providence. If I may at the beginning, your honor, ask for three minutes for rebuttal. You may. Excellent. Thank you. Your honor, at the oral argument in Citizens United, Justice Alito asked an incisive question, how would the statute apply if rather than a movie the court were considering a book? Chief Justice Roberts followed up with an equally incisive question. What if just one sentence at that book at the very end had said, vote for candidate X? It suggests it's worth starting by analyzing Rhode Island's statute in this case from a similar viewpoint. Imagine that next September, the Gaspee Project publishes a book about taxes and on one page, in one sentence, it says that Governor Daniel McKee in his 2022 state budget had a tax on forgiven Paycheck Protection Program loans. Just that one fact, that one sentence. Under the law that we're considering today, the officers of the Gaspee Project would face fines and even jail time unless they reported their book to the Board of Elections, disclosed to the Board all of their general fund donors over $1,000, stated their sponsorship on the cover of the book, even if, say, they had commissioned a Rhode Island tax expert to actually offer it. Counsel, excuse me, but how is this argument consistent with the fact that you're making a purely facial challenge to the statute? Isn't the question for us not whether there might be some use of the statute which could violate constitutional strictures, but whether the statute in all its permissible uses is unconstitutional? Yes, Your Honor, it is a facial challenge and that's a fair question. I think my book illustration, much like in Citizens United, which was also a facial challenge, goes to the fit of this law that under either exacting or strict scrutiny, one of the questions this court needs to ask is, is this law appropriately drawn to the interest the government is asserting? So I think the book example showing how one small fact in factual information in a larger communication can still be classified as an electioneering communication shows that this is an incredibly broad statute that is scoping within it a lot of speech that wouldn't necessarily be considered electioneering. One of the examples we give in our brief is, say, an American Legion post that's hosting a Veterans Day celebration. If that post sent out postcards mentioning that a local congressman would be speaking at their Veterans Day celebration, that would equally count as an electioneering communication under the statute. Could you just address the part of Citizens United that dealt with this question about when you could have disclosure for non-expressed advocacy just mentioning something and which upheld that part of BCRA and also our own precedent and our circuit which following that upheld statutes that don't bear no relation to this type of statute? So if you could just help me understand how, in light of that precedent, the arguments you're making are arguments that, as a panel, we're entitled to credit. Absolutely, Your Honor. So I think the first thing to remember is that Citizens United does not address our first or third counts. Our first count is around anonymity and McIntyre, which wasn't a part of the Citizens United decision in any large part. And our third count, dealing with the on-ad disclaimer of top five donors, wasn't discussed in Citizens United at all. And even to the extent that there's a brief mention of the stand-by-your-ad provision, it addresses different arguments, not a compelled speech argument, and doesn't address the top five donors at all. So I think Citizens United really is only relevant to our second count, which is the count on disclosure of donors. I think it's important there, and similarly with National Organization for Marriage, the First Circuit precedent you mentioned, Your Honor, to look at the fit that I was mentioning and the scope of Rhode Island statute compared to, for instance, the Maine statute at issue in National Organization for Marriage. Maine, for instance, had an escape hatch. You could go and ask for a hearing before their equivalent of the board to prove that your informational advocacy was not electioneering. So, for instance, the book that I was mentioning as an example, you could go to the board and say this shouldn't count. There's no similar provision in Rhode Island statute. Rhode Island statute goes after general fund donors, which is different from, say, the Independence Institute case. And in Citizens United, I think the other thing that was very real for the court was the fact that this was a pejorative movie that was being broadcast nationally at the time that Hillary Clinton was running for president. That's very different from what my clients are trying to do, which is provide, for instance, a legislative scorecard that's not pejorative and that's not a legislative scorecard. You're back to the as-applied argument there. And Bickra was upheld facially with respect to the disclosure provision. You're right, Your Honor, and I don't mean to make it an as-applied challenge. I'm trying to illustrate that the scope of Rhode Island's law is broader than either the Maine law in National Organization for Marriage. The scope of Bickra included the very thing you just described that is objectionable, which was the book example in the movie. So, I mean, I don't fully understand how that helps you very much. Bickra was very broad in scope. It was upheld facially. So, is the idea just that the McIntyre argument wasn't considered in Citizens United? Yeah, that's true, Your Honor. I'm just saying, what is your grounds of distinction between that and our prior case? Is it McIntyre wasn't specifically addressed and, therefore, you're saying that even though it was a disclosure requirement, they somehow didn't think about whether that would impinge on anonymity rights? Actually, I think that's true, Your Honor. So, the key distinction in campaign finance is between disclosure and disclaimer. So, disclosure is filings you have to make reporting your donors with a government agency like the board. Disclaimer is something that directly affects your speech. It's something that you are compelled to include in your speech materials. And weren't you really compelled to include some disclaimer in Bickra or not? There's a stand by your ad provision in Bickra that says, you know, I'm Daniel, sir, and I approve this message. Five minutes remaining. And it's true, Your Honor. There's two paragraphs in Citizens United that address the stand by your ad provision, but they only brought an under-inclusivity challenge and a vagueness challenge, not a McIntyre challenge or a compelled speech challenge, which are the challenges we're bringing today. And in the main case that we decided, didn't we consider those types of arguments? I don't believe so, Your Honor. As I read the National Organization for Marriage, there's two cases. There's the Duluth case specific to Rhode Island. I don't read either of those as addressing McIntyre and certainly not the compelled speech arguments we're making, which are based in part on the Niffle versus Becerra decision, which postdates those cases. And actually, I think Niffle versus Becerra is a really good case to think about. Hold on one second. Just tell you, I want to make sure your audio and video is still working. It's still working. I'm having some difficulty with it. There's an awful lot of an echo effect coming from somewhere. Okay. Can you hear? Has that gone down? That sounds better. Yeah. Okay. I think I may have been the culprit. Okay. Sorry about that, Mr. Stern. Continue. That's fine. Judge Saylor, did you have a question you wanted to ask? Well, McIntyre, of course, involved an individual's right to anonymous speech. It did not involve an organization's right to keep its donors anonymous, keep the identity of its major donors anonymous. Isn't that true? That is your honor, but I think the ACLU versus Nevada case, ACLU of Nevada case from the Ninth Circuit, is considered McIntyre's application to organizations. And the Ninth Circuit and the ACLU decision goes through the logic of McIntyre and finds that it's not really an exception for an individual kind of lone pamphleteer. You look at the logic of McIntyre, and the court, for instance, talks about the Federalist Papers or other large publishing enterprises that reach lots of people and cost lots of money. And in fact, at no point does the court discuss how much money Mrs. McIntyre spent on her communication. So nothing in the decision limits it to only a small lone pamphleteer. And I think the Ninth Circuit is right in saying corporations enjoy those same rights. In fact, one way in which Citizens United is relevant to us is that it verifies that corporations enjoy the same free speech rights that individuals do in this context. And I would say that includes the anonymity rights created by McIntyre. That Ninth Circuit case predates Citizens United, right? Yes, it does. That's true, your honor. But as I said, I think Citizens United actually verifies or confirms the Ninth Circuit's decision in that it says corporations enjoy the same free speech rights in this context as individuals. And that's what the Ninth Circuit said concerning McIntyre. But individuals, of course, when they make certain political contributions, are required to disclose them. And it's hard for me to reconcile Citizens United with upholding disclosure requirements as it does with a broad doctrine that would say, yes, you can have disclosure requirements. Those are perfectly fine. But if you form an is coming from. I think that's antithetic to the operating principle of Citizens United, as I read that case. I respect that, your honor. And I think that could be your conclusion on count two. But I think count one and three stand alone from Citizens United. And the other important part of that is the level of scrutiny that's involved. Disclosure, which is what the is subject to exacting scrutiny. Compelled speech, whether it's the speech of your name or the speech of your top five donors, when you're altering the content of a communication, that's subject to strict scrutiny. And it's a higher burden that the government has to bear. Well, how do you deal with the fact that the stand by your ad requirement was upheld in the argument? I'll just answer quickly, if I may. One, the arguments we're making here today were not considered in Citizens United. Those were under inclusivity and vagueness challenge, not a compelled speech or McIntyre challenge. And second, on our count three, even if you were to say stand by your ad is justified under strict scrutiny, that doesn't address the question of also forcing you to say your top five donors, which is information that's already disclosed to the board, that additional information is justified under strict scrutiny. I think that's a separate analysis that the court needs to undertake. And there's really no precedent on it at the circuit court level. There's just four district court decisions, which reach a variety of conclusions on that question. Any further questions from the panel? Okay, attorney, sir. Thank you. If you could just mute your audio and video. And attorney, did Sadick? Yes, your honor, Sadick. I was going to tell you to unmute your audio and video, but you've done that, so you may go ahead. Thank you, your honor. Catherine Sadick on behalf of the defendants. As the court has recognized, this court's prior decision in North National Organization for the case at hand. It already explicitly addressed and rejected many of the very same arguments that the plaintiffs raised in this case. And it applied a line of precedent, including Buckley, McConnell, and Citizens United, where the Supreme Court has repeatedly and vehemently reaffirmed, not only the constitutionality, but also the fundamental importance of disclosure laws. Rhode Island's act fits squarely within that precedent. It is clearly an election expenditure disclosure law that is only implicated by expenditures of over $1,000 on either an electioneering communication or an independent expenditure. In National Organization for Marriage v. McKee, this court applied exacting scrutiny to both the Ms. Sadick, your brother attempts to distinguish National Organization for Marriage on the ground that the main statute provides an express mechanism for getting what amounts to an advisory opinion or a waiver on a particular communication. Do I recall, or can you help me with the question of whether apart from the statute itself, the Rhode Island Board of Elections has a procedure in place for obtaining advisory opinions from the board? I am not aware of one, your honor, but I think that that distinction, that reference to the escape hatch is really immaterial because this court in National Organization for Marriage made clear that Citizens United, the act it was clear that this court's decision in National Organization for Marriage was not at all based on the so-called escape hatch. Citizens United was also very clear that the important interests that have been recognized in these cases are around providing information about who is speaking about candidates and political issues in close proximity to an election and is not limited to advocacy. Citizens United expressly found that the exacting scrutiny standard applied regardless of whether an ad had express advocacy, regardless of whether it was the functional equivalent of express advocacy. Ms. Sadick, could you address, if I've heard it correctly, there's at least three different distinctions that your opponent has identified that make both Citizens United and our prior precedent on similar laws not controlling in this case. The first is that neither of those cases, none of those prior precedents, including Citizens United, address the McIntyre issue directly. So, one, do you agree with that? And if you do agree with that, why is that not a problem for you? Second, they make the argument that the compelled speech argument was not addressed directly in any of those prior precedents. So, same as to that. And then, if I understand it, the third argument is the general fund donor point versus not a general fund donor restriction. So, if you could address those three points. There's one more, which I think is averted to everything that didn't come up on the argument, which is whether the same rules that apply to candidate electioneering communications also apply with respect to ballot measure and referenda cases. Sure, Your Honor. Let me start with the court's question around the general fund donor issue. So, under Rhode Island statute, there's an opt-out provision so that anyone who wishes to donate to the general fund and not be included in disclosures can easily do so simply by opting out of having their donation used for the purpose of an independent expenditure on electioneering communication. So, in effect, the only ones required to make expenditures, to make disclosures, are any donors who have made a donation that can be used for an expenditure like this. So, this does not at all target general fund donors. And how does that structure compare to the laws that we considered in our precedents that upheld them? And how does it compare to the structure of the law with respect to donors and background? So, the key in the precedent has been around shedding light on those who donate and those who contribute to our expenditures, election-related expenditures. So, under Rhode Island statute, in light of the opt-out provision, only those who donate or contribute to expenditures are captured in the statute, which brings that clearly within the court's precedent and Citizens United precedent. Also, to address the issue of candidates versus... I guess, just to be specific, was there a general fund disclosure requirement in BCRA or did it have a segregated fund? I believe the court in BCRA mostly focused and Citizens United mostly focused around disclosures around expenditures. I would push back on my opponent's suggestion that Rhode Island's law is targeted at general fund donors. The text of the statute very clearly only requires any organization or person that makes an election-related expenditure to be subject to the disclosure requirements. So, organizations that don't make these expenditures, for instance, are not subject at all. So, I think the characterization of the statute as targeting general fund donors is just not consistent. It's a statute that's focused on expenditures and for any donors who aren't partaking in expenditures, they can opt out of it. So, I think in all material respects, Rhode Island's act is an expenditure disclosure act and that's the target of it. Regarding the ballot referendum question, in National Organization for Marriage 2, this court addressed the issue of ballot questions and upheld that ballot questions are also subject to these disclosure requirements and fit within the precedent. In Citizens United and the relevant line of cases, the court's been very clear that the interest, the important interests, are in shedding light on who is talking about political issues, trying to sway election outcomes, and that applies regardless of whether it's a candidate or whether it's a referenda or ballot question. The key is the informational interest and identifying the people behind politically oriented messages. As this court said in National Organization for Marriage, citing Citizens United, and that's implicated regardless of a ballot referenda question or a candidate issue. To turn to McIntyre, which was another issue that the court asked me to address, McIntyre is clearly distinguishable because it was not an expenditure disclosure statute. As Judge Sellier pointed out, it was simply a statute that banned anonymous political communication. Go ahead, Your Honor. I understand there's a merits point about why whether the anonymity point that McIntyre puts into play, in your view, is an issue that's open to us to reconsider to consider for whether in light of the fact that Citizens United and our precedents dealing with these disclosure and disclaimer measures came after McIntyre and upheld the measures should be understood to preclude this panel from reaching that in the first instance. Yes, Your Honor. I do believe the panel is precluded from reaching that, or at least from addressing it in a way that would be inconsistent with Citizens United, because I think Citizens United is clearly the directly on-point precedent. What plaintiffs seek to do is to graft this other less on-point line of precedent onto this precedent. The court's precluded from turning to a different, less applicable line of precedent when there's directly applicable Supreme Court precedent that addresses this precise situation. The Second Circuit in Sorrell, the Sixth Circuit in Libertarian Party, the Ninth Circuit in Yamada v. Snipes, the Eleventh Circuit in Worley have all rejected attempts like this to graft McIntyre onto the election disclosure realm, as found at Citizens United is the applicable line of precedent. Your Honor, I'd also ask you to address the compelled speech issue. I think this court's decision in National Organization for Marriage, and the Supreme Court's decision in Citizens United are directly on-point, because in both cases, as this court has recognized, disclaimer requirements were involved. The court upheld disclaimer requirements and applied exacting scrutiny to them. This court in National Organization for Marriage noted that the provisions before it, which included both disclaimer provisions and reporting provisions, were all essentially disclosure provisions, were all provisions that focused on revealing information about the speaker, which the court has noted is less restrictive alternative to actual limits on speech. But Ms. Sadick, I think your brother's argument, as I understood it, was that the compelled speech argument that he's making was neither made nor considered in those cases. What's your response to that? I think when the Supreme Court in Citizens United and this court in National Organization for Marriage applied exacting scrutiny to disclaimer requirements, five minutes remaining, it essentially resolved that issue. The court did not apply the type of heightened scrutiny that was applied in NIFLA. The court applied the exacting scrutiny standard that's based in this particular context of disclosure-oriented laws. But that, with respect, I think that is not the point. The point, as I understand it, is that your brother is saying, I'm making an argument that neither Citizens United nor the First Circuit in NOM considered, and therefore this argument should be considered anew, not deemed to be foreclosed because it was never really raised in those prior cases. That's what I'm looking for a response to. Is the compelled speech argument raised in either of those cases? I think it was not directly raised in the same way that plaintiffs are raising it now. So in that sense, the plaintiffs are raising something slightly different. But I think that the analysis in Citizens United is dispositive regardless because essentially Citizens United already resolved that issue and already found that disclosure-type requirements, disclaimer requirements, fit within the disclosure realm. And I think just as a matter of fact, the NIFLA decision was issued after Citizens United, but it's clear that in that case it's a content-based requirement. A pro-life pregnancy claimant was required to put up a substantive message that was in typical to his own beliefs, which I think is on its face very different from a disclaimer requirement, which simply requires the speaker to identify themselves. But in any event, that's not an election case, is it? That's right. It's also not an election case. I think the Supreme Court has been pretty clear that there's a separate framework for election disclosure and disclaimer requirements. Yes, Your Honor, I agree. The line of cases, Buckley, McConnell, Citizens United, have all reiterated again and again and again that the election context is something that's very unique and it's very important to the functioning of our very democracy that the citizens were entrusted to making the decisions about the direction of this take, have the information they need to make those decisions. It's a very distinct line of precedent. Can I ask just one thing that just puzzles me? If the Providence Journal writes a news story in the run-up to the election about the election, naming the candidate, naming the ballot measure, I assume they're not subject to these requirements, correct? That's right. There are explicit exceptions within statute for news articles, for instance. How is that not problematic? That certain speakers are exempted from it and others are not, even though they're engaged in the same informational provision about an election? Well, Your Honor, first of all, that's not an argument that the plaintiffs have raised in this case and the plaintiffs have been very particular in noting the types of arguments that they're raising and didn't make that type of a challenge to this law. So I would say that's not before the court, but regardless, I think the difference is expenditures. A business, for instance, or a newspaper that is running news articles or commentary is fundamentally different from an organization or a person that are expending money to try to sway an election. That fits within the expenditure realm as opposed to the news realm. And that's what the line of precedent is. In that regard, because I just wonder whether a number of the examples that your opponent identified arguably then would fall into that news media exception, I'm not sure exactly how it's written, wouldn't count as an expenditure in the way that you're describing the test. What is the mechanism for someone up front figuring out which box they followed? So in other words, if I want to speak and I'm not sure, you know, I just start a new newsletter and I think I'm the province journal, but I'm worried they're going to think I'm the victory pack. What can I do to figure out which one I am so I don't find myself speaking and then committing a crime? Sure. So I think the requirements are clear in the face of the statute. Certainly the board of elections, you know, enforces and regulates the statute. And I would also reiterate that I think that that issue is not before the court because plaintiffs were very vehement in noting that they were not bringing the vagueness challenge or an overbreath challenge. They were bringing challenges based on McIntyre and compelled speech and NAACP and they were very clear they were not bringing those types of challenges. So I would assert that that issue is not before the court, it doesn't need to be addressed. Time has expired. Any further questions from the panel? Okay, thank you, Ms. Hayden. If you could mute your audio and video. I think Mr. Soar reserved three minutes for rebuttal. If you could unmute your audio and video. Yes, Your Honor, thank you. There we go. Go ahead. Your Honor, I think three points in three minutes, hopefully. First, let me echo the question you asked that was in the briefs but not discussed in my time, which is the difference between ballot initiatives and referendum votes and candidate elections. I think you're quite right if you read First National Bank versus Biladi, that the Supreme Court has always drawn a distinction between those two types of settings and that the level of scrutiny the court should apply is lower in the referendum context. I like the phrase the Tenth Circuit has, looking at just the informational interest that was asserted in a referendum context, which is the only interest here, where they say it has some value, but not that much. The second thing I would say is the question of whether or not McIntyre is just old and outdated and even overruled. And I think the way you know that that's not true... I don't think anybody's taken that. I think the idea is that it's distinguishable because it was an individual. So the question is, when we have a case not involving an individual in this separate context, why would we think McIntyre is on point, given the way that statutes have been upheld in this very different context? Aggregate the anonymity of the persons involved in the speech. Yeah, fair enough, Your Honor. And there I would go to my earlier point that I think Citizens United respects and extends the principle that corporations enjoy the same free speech rights as individuals, which is what you see was upheld in McIntyre. The third thing I think I take issue with is the idea that there's not a cross current between election cases and non-election cases. You look at the original election cases, for instance, Buckley, and the court there looks at Talley versus California, which dealt with anonymous speech not in the election context, but just in the general... He was advocating for a boycott. Or NAACP versus Alabama, which again was very much not in the election context, but is the case that the court uses to think about the exact... Just so I give you a chance to answer, if I recall, there was a fairly extensive discussion in Citizens United about the possible harms. Am I right to information being disclosed and whether that would chill people? And they said that maybe you could show it on some as applied circumstances, but in the absence of that, there's not a facial problem. So it just seems a little odd to treat Citizens United as not having been concerned with exactly the type of concerns that McIntyre was concerned about. So you're certainly right, your honor. I think the court says that Citizens United didn't include anything in the record that justified their concerns, although it was, as you say, a facial challenge. But the court has, I think, always been concerned with the possibility of retaliation based on a disclosure. That's true not only in McIntyre, but for instance, in Watchtower, Bible and Track Society, which comes along a few years later and reaffirms McIntyre. I think you see that same concern about the possibility of retaliation. So I think that's a consistent theme. And honestly, we'll know more this summer after the Supreme Court decides the Americans for Prosperity case that it heard argument on recently, how the court thinks about those retaliation concerns. Time has expired. With that, I'll conclude if you have anything else, your honor. Thank you. Anything further from the panel? Thank you very much, Mr. Sir. That concludes arguments in this case. Attorney Sir and Attorney Sadick, you should disconnect from the hearing at this time.